(C.D. 4016)

BORDER BROKERAGE COMPANY, INC. *v.* UNITED STATES

▬▬

---

[1] A device for making, breaking, or changing the connections in an electric circuit.
[2] See Record 41, 46, 71.

United States Customs Court, First Division

(Decided May 7, 1970)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Sheila N. Ziff* and *Herbert P. Larsen*, trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

WATSON, Judge: The merchandise involved in the above consolidated protests was identified at the trial as "Fedje bits" and was classified as interchangeable tools for hand tools or for machine tools, "cutting tools * * * with cutting part containing by weight over 0.2 percent of chromium, molybdenum, or tungsten, or over 0.1 percent of vanadium" under item 649.43 of the Tariff Schedules of the United States at a rate of 30 per centum ad valorem.

Plaintiff contends that the merchandise is properly classifiable as "knives and cutting blades for power or hand machines" under item 649.67 of the TSUS at a rate of 10 per centum ad valorem.

The pertinent statutory material reads as follows:

Tariff Schedules of the United States

Schedule 6, Part 3, Subpart E:

Subpart E headnotes:

---

 * * * * * * *

3. The provisions for "*interchangeable tools for hand tools or for machine tools*" cover interchangeable tools which are designed to be fitted to hand tools or machine tools and which cannot be used independently, and include, but are not limited to, interchangeable tools for pressing, stamping, drilling, tapping, threading, boring, broaching, milling, cutting, dressing, mortising or screw-driving, but do not include saw blades, knives, or cutting blades, and do not include holding or operating devices even if attached to such interchangeable tools.

 * * * * * * *

Interchangeable tools for hand tools or for machine tools, including dies for wire drawing, extrusion dies for metal, and rock drilling bits:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

649.43 Cutting tools (except tools provided for in item 649.41) with cutting part containing by weight over 0.2 percent of chromium, molybdenum, or tungsten, or over 0.1 percent of vanadium _____ 30% ad val.

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

Knives and cutting blades for power or hand machines:

| | | | | | | |
|---|---|---|---|---|---|---|
| * | * | * | * | * | * | * |

649.67 Other _____ 10% ad val.

Plaintiff called one witness and submitted one exhibit into evidence and defendant introduced two exhibits.

Plaintiff's witness was Mr. Ernest Cannon, president of Cannon Machine Works, a company which does general light manufacturing and jobbing or machine shop work. The witness was familiar with the imported merchandise because he developed a small transmission unit used with the McCulloch power chain saw to drive the auger in which the bit is attached. This changed the function of the power chain saw to that of a power drill.

The drill was used in stump clearing operations. A two and a half foot long drill weighing about five pounds was placed in the transmission Mr. Cannon developed, and a hole was drilled deep into the stump of the tree. This hole was then packed with dynamite and the ensuing blast destroyed the stump. This method greatly facilitated the job of clearing forested land. The only problem was that the drills were quickly dulled because of rocks and dirt embedded in the stump. This necessitated a return to the shop for a replacement since, due to the size and weight of the drill, it was difficult for the driller to carry more than one replacement with him.

The "Fedje bit" (plaintiff's exhibit 1) was developed to eliminate this problem. It is approximately 2½ inches in length and width at its longest and widest. It is one-eighth of an inch thick. It has eight cutting edges, none of which are particularly sharp. The auger has a slot milled in it in the manufacturing process into which the Fedje bit is placed. The bit is held in place by a quarter-inch cap screw which goes through a hole in the auger and through the hole in the bit. The bit can be replaced in approximately one minute and its small size enables a driller to carry a dozen or more replacement bits with him.

The bit and auger when used together cuts the wood in the same manner as other conventional one-piece drills. It is turned clockwise and due to the small angle on the cutting edges, it pushes the wood away in front of it. Rather than producing a shaving as a carpenter's auger does, it breaks up the wood and produces a very small shaving. While it doesn't drill as efficiently as a real auger bit does, it stands up longer and its ease of replacement makes it a useful tool for stump drilling.

The issue in this case is whether the Fedje bit is a knife or cutting blade which is excluded from item 649.43, *supra*, by virtue of the language of headnote 3, subpart E, *supra*.

Headnote 3, *supra*, explains that "*interchangeable tools for hand tools or machine tools*" includes, *inter alia*, tools used for drilling or boring but specifically excludes saw blades, knives or cutting blades.

Item 649.43 encompasses cutting tools which are interchangeable tools but are not knives or cutting blades.

As defined in *Webster's New International Dictionary of the English Language*, 1957, unabridged edition, a knife is:

> 1. a An instrument consisting (in its modern form) of a thin blade, usually of steel, and having a sharp edge for cutting, fastened to a handle; a longitudinally edged instrument operated by pressure. * * * 3. *Mach.* A sharp cutting blade or tool in a machine, as in a hay cutter or a wood-planing machine, or in a machine cutting out envelope blanks.

A Fedje bit is clearly not a knife under this definition. Though it has an edge, it is not sharp. It has no handle and it is not thin as one would consider thinness when talking about a knife.

A blade, as defined in *Webster's New International Dictionary of the English Language*, 1957, unabridged edition, is:

> 1. A leaf of a plant, esp. of an herb and now chiefly of grass and cereals * * *. 2. An object or part of an object having a resemblance to the blade of a leaf, sword, etc. * * *. 3. The cutting part of an instrument; as the blade of a knife or a sword * * *.

An inspection of the Fedje bit shows it bears no resemblance to a blade of a leaf, sword or knife, nor to the cutting part of any such article. As was stated in *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932), "a sample of merchandise in issue * * * is a very potent witness."

The Fedje bit has little in common in either appearance or use to the knife or cutting blade contemplated in item 649.67, *supra*. It is clearly an instrument used in a drilling or boring type of operation. The fact that such an operation is in fact a method of cutting, does not in and of itself make the object doing the cutting a knife or

cutting blade. In *Keuffel & Esser Co.* v. *United States*, 40 CCPA 190, C.A.D. 516 (1953), the appellate court upheld this court's ruling, *Id.* v. *Id.*, 28 Cust. Ct. 306, C.D. 1428 (1952), that increment borers used to remove specimens from trees were properly classified as cutting tools in the nature of a bit or gimlet under paragraph 396 of the Tariff Act of 1930.

Item 649.43, *supra*, shows no intent to change this ruling and exclude drills, gimlets and drill bits from the ambit of the provision. The only exclusionary language in item 649.43 excludes those articles covered in item 649.41 which includes "files and rasps, including rotary files and rasps". There is no language that would exclude drills, drill bits or gimlets from inclusion in this item.

Further evidence of the proper classification of the article as a cutting tool can be found in an examination of the *Explanatory Notes to the Brussels Nomenclature*. According to the *Tariff Classification Study Submitting Report*, 1960, at page 8, "The 'Brussels Nomenclature' and the 'Standard Industrial Classification Manual' exerted the greatest influence on the arrangement of the proposed revised schedules."

Heading 82.05 reads in part as follows:

> 82.05—INTERCHANGEABLE TOOLS FOR HAND TOOLS, FOR MACHINE TOOLS OR FOR POWER-OPERATED HAND TOOLS (FOR EXAMPLE, FOR PRESSING, STAMPING, DRILLING, * * * BORING * * *), INCLUDING DIES FOR WIRE DRAWING, EXTRUSION DIES FOR METAL, AND ROCK DRILLING BITS.

> * * * the present heading covers an important *group of tools which cannot be used independently, but are designed to be fitted into* hand tools * * * and especially into machine tools for pressing, stamping, threading, tapping, drilling, boring, reaming, broaching, milling, gear-cutting, turning, cutting, morticing or drawing metals, wood, stone, ebonite, certain plastics or other materials, or for screw-driving.

> \* \* \* \* \* \* \*

> The tools classified in the present heading include, *inter alia:*

> \* \* \* \* \* \* \*

> (2) Drilling, boring, reaming, lapping and trueing tools, e.g., drills (spiral or twist drills, centre bits, etc.), brace bits, reamers, laps, etc.

> \* \* \* \* \* \* \*

> (9) Tools for rock drilling, mining, earth boring, oil well drilling and sounding, etc. (e.g., augers, boring bits and drills).

The language would clearly include the imported Fedje bit as a cutting tool which is an interchangeable tool for a hand or machine tool within the intendment of item 649.43, *supra*.

For the above stated reasons, we find that the Fedje bits were properly classified by the collector as cutting tools under item 649.43, *supra*.

The protests by the plaintiff are overruled. Judgment will be entered accordingly.